1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3

4

5   REO BOREN,                                )

                    Plaintiff,                )        3:08-CV-00174-LRH-VPC

6                                             )

7         vs.                                 )        <u>**REPORT AND RECOMMENDATION**</u>
                                              )        <u>**OF U.S. MAGISTRATE JUDGE**</u>

8   BOCCA, *et al.*,                          )

                    Defendants.               )        November 13, 2009

9   _____  )

10        This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

11   District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

12   § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#69).

13   Plaintiff opposed (#73-4, 77), and defendants replied (#81).  For the reasons stated below, the court

14   recommends that defendants' motion for summary judgment (#69) be granted in part and that

15   remaining claims be dismissed.

16                       **I.  HISTORY & PROCEDURAL BACKGROUND**

17        Plaintiff Reo Boren ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Ely State

18   Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#11).  Plaintiff

19   brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment

20   right to be free from cruel and unusual punishment, which allegedly occurred while he was

21   incarcerated at Nevada State Prison ("NSP").  *Id.*   On July 14, 2008, the district court granted

22   plaintiff leave to proceed *in forma pauperis* (#10), and plaintiff filed his first amended complaint at

23   that time (#11).[1]  Plaintiff named the following persons as defendants: Craig Madieros, NSP

24   _____

25        [1]   Plaintiff appears to have a number of complaints before the court.  On November 12, 2008,
     defendants answered plaintiff's first amended complaint (#27).  The next day, the court issued its scheduling

26   order (#30).  On November 20, 2008, plaintiff filed a motion to amend his complaint (#31), and the court
     denied that motion (#33).  Nevertheless, plaintiff filed an amended complaint (#40).  The court declined to

27   entertain this amended complaint because it had denied plaintiff leave to file such an amended complaint.
     Undaunted, plaintiff then filed another amended complaint (#61), which the court struck for noncompliance

28   with Local Rule 15-1 (#64).  Therefore, the court disregards these amended filings (#40, 61) and addresses

1   Correctional Officer; David Frobes, NSP Senior Correctional Officer; Artemio Salispara, NSP

2   Correctional Officer; Josh Rogers, NSP Senior Correctional Officer; and Darin Baker, NSP

3   Correctional Officer.  *Id*.

4        Count I of plaintiff's first amended complaint alleges that defendants Madieros and Frobes

5   used excessive force causing injuries to his wrist and shoulder.  *Id.*, p. 6.  The incident arises from

6   contact between plaintiff and defendant Madieros.  Although plaintiff and defendant Madieros

7   dispute who bumped into whom, the undisputed fact remains that defendant Madieros ordered

8   plaintiff to maintain a position on the fence, and plaintiff complied (#69, p. 4; #11, p. 6).  At that

9   point, plaintiff maintains that defendant Madieros "attacked" him and "slammed" him to the ground

10  (#11, p. 6).  Defendant Madieros contends that plaintiff abruptly pushed off the fence to gain a better

11  position by which to fight (#69, p. 5).  Defendant Madieros struggled with plaintiff, pushed him back

12  up against the fence, and then "directed plaintiff to lie on the ground" (#69, Ex. A).

13       Once plaintiff was in handcuffs, defendant Frobes then escorted plaintiff to the infirmary

14  (#11, p. 6).  Plaintiff alleges that defendant Frobes "twisted and bent [his] arm, holding [his] thumb,

15  so far behind [his] back that [his] thumb and wrist cracked and further injured [his] shoulder."  *Id.*

16   Defendant Frobes asserts that plaintiff kicked his legs and pulled his arms so as to resist restraint

17  (#69, Ex. K) and that defendant Frobes used only the force necessary to gain plaintiff's compliance.[2]

18  *Id.*

19       In count II, plaintiff appears to allege that defendants Salispara and Madieros "conspired,

20  fabricated, and filed false reports."  *Id.* p. 5.  He further alleges that these acts resulted in

21  _____

22  the July 14, 2008 complaint in this case (#11).

23       [2]    Defendants address a separate incident in their motion which occurred on November 8, 2007.
24  On that date, prison officials forcibly removed plaintiff from his cell.  Within the facts constituting the
    conspiracy claim in count II, plaintiff refers to the use of force by prison officials during this incident.  The
25  court must construe *pro se* complaints liberally, and this set of facts would appear to give rise to a claim of
    excessive force.  However, plaintiff dispels this aspect of the complaint and clearly states in his opposition
26  that his "lawsuit is based soley [sic] on 7-5-07 incident. . ." (#73-4, p. 1).  In addition, the court notes that
    plaintiff does not name all of the officers involved in the November 8, 2007, incident. He also labels count
27  II in his amended complaint, "*Intentional fabrication of evidence* resulting in solitary confinement, loss of
    liberties and bodily injury" (#11, p. 5) (emphasis added).  Given plaintiff's clear indication that this set of
28  facts is not part of the claims at issue, the court does not consider the November 8, 2007 incident.

1   constitutional violations such as harassment and "deprivation of water, and basic human needs." *Id.*

2   In count III, plaintiff alleges that defendants Rogers and Baker placed him in a cell with no

3   running water and denied him water for thirty days, serving him only milk or "Koolaid" beverage

4   as liquids.  *Id.* p. 4.  Plaintiff also alleges that a broken pipe leaked raw sewage into his cell.  *Id.*

5   Plaintiff alleges that defendants ignored his pleas for help despite their knowledge that his cell was

6   flooded with raw sewage.  *Id.*

7   The court notes that the plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff

8   appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

9   of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

10  *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

11  **II.  DISCUSSION & ANALYSIS**

12  **A.    Discussion**

13  **1.    Summary Judgment Standard**

14  Summary judgment allows courts to avoid unnecessary trials where no material factual

15  disputes exist.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

16  The court grants summary judgment if no genuine issues of material fact remain in dispute and

17  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In deciding

18  whether to grant summary judgment, the court must view all evidence and any inferences arising

19  from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d

20  1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

21          [W]e must distinguish between evidence of disputed facts and
            disputed matters of professional judgment.  In respect to the latter,
22          our inferences must accord deference to the views of prison
            authorities.  Unless a prisoner can point to sufficient evidence
23          regarding such issues of judgment to allow him to prevail on the
            merits, he cannot prevail at the summary judgment stage.
24
25  *Beard v. Banks*, 548 U.S. 521, 530 (2006).  Where reasonable minds could differ on the material

26  facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby,*
    *Inc.*, 477 U.S. 242, 251 (1986).

27  The moving party bears the burden of informing the court of the basis for its motion, and

28

1    submitting evidence which demonstrates the absence of any genuine issue of material fact.

2    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

3    the party opposing the motion may not rest upon mere allegations or denials in the pleadings but

4    must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson*, 477

5    U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for

6    discovery, against a party who fails to make a showing sufficient to establish the existence of an

7    element essential to that party's case, and on which that party will bear the burden of proof at

8    trial.  *Celotex*, 477 U.S. at 322-23.

9    **B.    Analysis**

10         First, defendants argue that plaintiff has not presented a genuine issue of material fact

11   regarding his excessive force claim (#69, p. 11).  Next, notwithstanding defendants failure to

12   address the issue, the court considers the underlying facts of plaintiff's conspiracy claim. Finally,

13   with respect to plaintiff's condition of confinement claims, defendants argue that plaintiff has

14   failed to exhaust administrative remedies.  *Id.* p. 19.  The court in turn examines each challenge

15   to plaintiff's claims below.[3]

16         **1.    Excessive Force**

17         As set out above, plaintiff alleges in count I that defendants Madieros and Frobes violated

18   his Eighth Amendment rights in their use of force (#11, p. 5).  Defendants admit their use of

19   force, but they maintain that their actions were made in good faith to maintain order and were at

20   no time intended to cause harm (#69, Exs. A, K).

21         Where an inmate is claiming a violation of his Eighth Amendment right to be free from

22   cruel and unusual punishment based on use of excessive force, the proper inquiry is whether the

23   force resulted in the unnecessary and wanton infliction of pain or suffering.  *Hudson v.*

24   *McMillian*, 503 U.S. 1, 5 (1992).  To determine whether the force used was wanton and

25   _____

26         [3]    Defendants also argue that they are entitled to summary judgment for plaintiff's failure to
     file points and authorities in accordance with Local Rule 7-2(d), which states that "[t]he failure of an
27   opposing party to file points and authorities in response to any motion shall constitute a consent to granting
     the motion." LR 7-2(d).  Notwithstanding the alleged deficiencies of plaintiff's opposition to the instant
28   motion, the court addresses the merits of the case.

                                                    4

1    unnecessary "the core judicial inquiry is . . . whether force was applied in a good-faith effort to

2    maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.  In making

3    this determination, the court considers the following factors: (1) the extent of the injury suffered

4    by the inmate, (2) the need for application of force, (3) the relationship between that need and the

5    amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any

6    efforts made to temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S.

7    312, 321 (1986)).  Moreover, there is no need for a showing of a serious injury as a result of the

8    force, but the lack of such an inquiry is relevant to the inquiry. *Id*. at 7-9, *Martinez v. Stanford*,

9    323 F.3d 1178, 1184 (9th Cir. 2003). The court must give deference to the prison officials when

10   reviewing use of force and cannot substitute its own judgment for the judgment of prison

11   officials. *Whitley*, 475 U.S. at 322.  Unless the evidence supports a reliable inference of

12   wantonness, the case should not go to the jury. *Id.*

13       In sworn affidavits, both defendants declare that they used no more force than was

14   necessary (#69, Exs. A, K) and submit a medical report, which evidences the extent of plaintiff's

15   injuries. *Id*. Ex. D.  Because the claims of excessive force against defendants Madieros and

16   Frobes are factually distinct (defendant Madieros's alleged actions cease at the moment

17   defendant Frobes's actions commence), the court analyzes the *Hudson* factors with respect to

18   each defendant.

19           **a.    Defendant Madieros**

20       First, the court looks to the extent of plaintiff's injury.  Here, plaintiff claims to have

21   dislocated his shoulder when defendant Madieros brought him to the ground, but plaintiff's July

22   5 medical report, included in defendants motion, does not evidence any dislocation of the

23   shoulder (#69, Ex. D (*sealed*)).[4]  The report merely notes several abrasions around the right wrist

24   _____

25       [4]     Plaintiff questions the authenticity of the medical report because it includes reference to an
26   "x-ray." Plaintiff claims that such an x-ray was not performed at the time of the medical report.  Rather it was
     taken two months later.  In essence, plaintiff asks how a report can refer to an x-ray if that x-ray had not yet
27   occurred.  However, the court notes that the reference to the x-ray is made in the "plan" section of the
     medical report.  Medical reports are typically written in "SOAP" format, an acronym for "Subjective,
28   Objective, Assessment, and Plan." Ginge Kettenback, *Writing Soap Notes* 1-2 (3d ed. 2004). The "plan"
     portion of the medical chart, as listed on plaintiff's form here, includes "treatment, regimen, follow-up visits,

1    area; thus, plaintiff's injuries are not extensive.  Second, the court finds that there was need for

2    application of force.  Regardless of who initially bumped whom, defendant Madieros

3    commanded plaintiff  to place his hands on the fence, and plaintiff complied.[5]  Plaintiff alleges

4    that defendant Madieros, absent any need, "slammed" him to the ground (#11, p. 6).  Plaintiff

5    also claims to have produced the affidavit of a witness who is able to corroborate this testimony

6    (#73-4, p. 2); however, plaintiff fails to include this in his opposition.  On the other hand,

7    defendants produce the declarations of three corrections officers, which note that plaintiff kicked

8    his legs and pulled his arms away so as to resist being restrained (#69, Exs. A, F, K) .  An

9    aggressive inmate who seeks to fight with prison staff would necessitate the need for force.

10   Third, there is a reasonable relationship between the need for force and the amount of force used.

11   Defendants establish and plaintiff does not dispute that other inmates were in the area of the

12   altercation and presented a grave danger to the safety and security of the institution (#69, Exs. A,

13   F).  The amount of force used, forcing plaintiff to the ground (like the other inmates in the

14   vicinity), was necessary to maintain control of plaintiff.  Fourth, because of the abruptness of

15   plaintiff's action and the presence of other inmates, defendants Madieros reasonably perceived

16   plaintiff to be a threat.  Finally, defendant Madieros attempted to temper the severity of a forceful

17   response by first restraining plaintiff in a standing position prior to taking him to the ground.

18          The analysis of the factors above point to defendant Madieros's necessity to employ

19   force, and nothing evidences any maliciousness or intent to cause harm on defendant Madieros's

20   part.

21          **b.     Defendant Frobes**

22          First, the court looks to the extent of plaintiff's injury.  Plaintiff claims that defendant

23

24   disposition." *Id.* Here, plaintiff's admission that an x-ray was taken after his medical visit bolsters the
25   credibility of the medical report by showing that prison officials followed the "plan" in the July 5 medical
     report.

26          [5]      In his opposition, plaintiff continues to press the fact that he was the victim of defendant
27   Madieros's bump (#73-4).  Plaintiff misses the mark with this argument.  "Not every push or shove, even if
     it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."
28   *Hudson*, 503 U.S. at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

1    Frobes twisted and "cracked" his wrist and submits an NDOC medical form, presumably made

2    upon his entry to ESP, which notes that medical officers prescribed a wrist brace for pain and

3    "deformity from fracture" (#73-4, p. 5).  Plaintiff claims to have further documentation of the

4    injuries, but he provides nothing else to the court.  In addition, the court notes that the July 5,

5    2007 medical report makes no reference to any injury of his wrist or thumb (#70, Ex. B (*sealed*)).

6    The notes merely refer to plaintiff's altercation with defendant Madieros.  *Id.*  Second, the need

7    for application of force existed because plaintiff was allegedly kicking his feet and resisting (#69

8    , Ex. K).   Third, the relationship between the force used and the need for force was reasonable

9    because pressure on the thumb and wrist to gain compliance seems reasonable after plaintiff's

10   violent altercation with defendant Madieros.  Fourth, plaintiff's recent actions were such that

11   defendant Frobes could consider him a threat.  Finally, no evidence demonstrates that defendant

12   Frobes attempted to temper the severity of his response.

13        The alleged injury and defendant Frobes lack of attempt to temper the severity of

14   response weighs in favor of plaintiff.  However, the need for force existed and defendant Frobes

15   attests that he only used the force necessary to gain plaintiff's compliance.  On balance, these

16   factors militate toward finding that defendant Frobes did not act with the intent to cause harm.

17        Furthermore, the court underscores its obligation to give deference to prison officials

18   when reviewing use of force and not to substitute its own judgment for the judgment of prison

19   officials.  *See Beard*, 548 U.S. at 530.  Unless the evidence supports a reliable inference of

20   wantonness, the case should not go to the jury. Based on the *Hudson* factors, the evidence does

21   not support a reliable inference that defendants used excessive force during the incident on July

22   5, 2007.  As the Supreme Court has noted, the prisoner must point to sufficient evidence to

23   demonstrate that he can prevail on the merits.  *Id.*  Plaintiff's showing here does not supply a

24   reliable inference and thus falls short of what is needed to overcome summary judgment.

25        Therefore, defendants' motion for summary judgment is granted as to plaintiff's claim of

26   excessive force in count I.

27

28

1    **2.    Conspiracy Claim** [6]

2          In count II of plaintiff's amended complaint, he appears to allege that officers engaged in

3    a conspiracy to deprive him of his constitutional rights. Specifically, plaintiff asserts that

4    defendants Madieros and Salispara conspired to fabricate reports that resulted in plaintiff's

5    solitary confinement, the conditions of which plaintiff alleges violated his Eighth Amendment

6    rights. The court finds that plaintiff's complaint fails to state a claim for relief, and accordingly,

7    it dismisses the claim.

8          To establish a claim for conspiracy to deprive a person of his or her civil rights, a plaintiff

9    must prove that a meeting of the minds occurred between two or more persons to deprive the

10   plaintiff of his civil rights. *See Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Additionally,

11   the plaintiff must demonstrate that some racial or other class-based, discriminatory animus for

12   the conspirators' conduct motivated the deprivation, and the plaintiff must be a member of the

13   discriminated class. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002).

14   Plaintiffs alleging a conspiracy to deprive them of their constitutional rights must "include in

15   their complaint non-conclusory allegations containing evidence of unlawful intent or face

16   dismissal prior to the taking of discovery." *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir.

17   1997).

18         In this case, plaintiff offers nothing more than conclusory allegations that the defendants

19   "conspired" to create false reports (#11, p. 5). Plaintiff asserts that he has reports which prove

20   that defendants Madieros and Salispara conspired to falsify information; however, he fails to

21   present any evidence of such. *Id.* Additionally, plaintiff fails to allege any discriminatory

22   animus behind defendants' conduct and raises no facts that remotely suggest any discriminatory

23   actions on the part of defendants. Allegations such as these with no evidence are insufficient to

24

25         [6]    Although defendants do not address a conspiracy claim in the instant motion, the court must
26   consider one given the underlying facts of count II of plaintiff's complaint. *See Fontana v. Haskin*, 262 F.3d
     871, 877 (9th Cir.2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments
27   show that the claimant may be entitled to some relief."). Notwithstanding defendants' failure to challenge
     it, the court must dismiss a claim at any time if the court determines that the action fails to state a claim on
28   which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

1  overcome dismissal.

2      Therefore, plaintiff's conspiracy claim in count II is dismissed pursuant to 28 U.S.C. §

3  1915(e)(2)(B)(ii).

4      **3.    Exhaustion of Administrative Remedies**

5      Defendants argue that plaintiff has failed to exhaust his administrative remedies with

6  respect to any claim concerning conditions of confinement (#69, p. 19).   Defendants attach to the

7  instant motion plaintiff's grievance history report.  *Id.* Ex. I.  Plaintiff argues that he did exhaust

8  but fails to submit any evidence in his opposition (#73-4, p. 3).

9      **a.    Prison Litigation Reform Act**

10     The Prison Litigation Reform Act of 1996 (the "PLRA") amended 42 U.S.C. § 1997e to

11 provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of

12 this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

13 facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

14     Although once within the discretion of the district court, the exhaustion of administrative

15 remedies is now mandatory.  *Booth v. C.O. Churner*, 532 U.S. 731 (2001).  Those remedies

16 "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  *Porter v.*

17 *Nussle*, 534 U.S. 516, 524 (2002), citing *Booth*, 532 U.S. at 739-40 n.5.  Even when the prisoner

18 seeks remedies not available in the administrative proceedings, notably money damages,

19 exhaustion is still required prior to filing suit.  *Booth*, 532 U.S. at 741.  Recent case law

20 demonstrates that the Supreme Court has strictly construed section 1997e(a).  *Id.* at 741 n.6 ("We

21 will not read futility or other exceptions into statutory exhaustion requirements where Congress

22 has provided otherwise").

23     **b.    NDOC Procedures**

24     The NDOC grievance procedure is governed by Administrative Regulation 740 ("A.R.

25 740) (#12, Ex. A). In order to exhaust available remedies, A.R. 740 requires the following: (1) an

26 informal review process; (2) a first level formal grievance appealing the informal grievance

27 decision to the warden; and (3) a second level grievance, which is decided by the Assistant

28 Director of Operations. *Id*. A.R. 740 requires NDOC officials to respond at each grievance level

1    within a specified time period, beginning from the date of receipt of the inmate's grievance. *Id.*

2    Inmates are given six months to file an informal grievance when the claims involve personal

3    property damage or loss, personal injury, medical claims or any other torts claims. *Id.*, p. 14.

4    Plaintiff then has five days after the return of a decision based on the level of review to appeal

5    the decision. *Id.*

6                    **c.    Dismissal of Claims for Failure to Exhaust**

7            Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional

8    requirement, and defendants bear the burden of raising and proving that the plaintiff has not

9    exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n. 9

10   (9th Cir. 2003), *cert denied*, 540 U.S. 810 (2003).   Inmates are not required to specifically plead

11   or demonstrate exhaustion in their complaints, rather it is the defendant's responsibility to raise

12   the issue in a responsive pleading.  *Jones*, 549 U.S. at 216.  Failure to exhaust is treated as a

13   matter in abatement, not going to the merits of the claim, and is properly raised in an

14   unenumerated Rule 12(b) motion.  *Wyatt*, 315 F.3d at 1119.   The court may look beyond the

15   pleadings and decide disputed issues of fact without converting the motion into one for summary

16   judgment; however, "if the district court concludes that the prisoner has not exhausted

17   nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at

18   1119-20, *as noted in O' Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see*

19   *also, Rizta v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988)

20   ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated

21   as such if raised in a motion for summary judgment.").

22          Moreover, plaintiffs must properly exhaust nonjudicial remedies.  The PLRA requires

23   "proper exhaustion," meaning that the prisoner must use "all steps the agency holds out, and

24   doing so *properly* (so that the agency addresses the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 89

25   (2006); *see, e.g., Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006) (construing the

26   "proper exhaustion" requirement of *Woodford* to mean that a grievance has been properly

27   exhausted (1) when fully addressed on the merits ("the merits test"), and (2) when a grievance

28   has complied with all critical procedural rules and deadlines ("the compliance test")).

1   Here, defendants submit a record of plaintiff's grievances to demonstrate that plaintiff

2   failed to exhaust his administrative remedies with regard to his condition of confinement claims

3   (#69, Ex. I).  Accompanying those documents, defendants submit the declaration of the NSP

4   Grievance Coordinator, Silvia Garcia, who attests that the exhibit submitted contains "all

5   grievances filed by [plaintiff] at Nevada State Prison in regards to his conditions of confinement"

6   (#69, Ex. J). These reports demonstrate that plaintiff filed numerous grievances; however, none

7   advanced past the second level of administrative review.  Although plaintiff notes that he has

8   "1000s of grievances," he does not submit any evidence to demonstrate that he has fully

9   exhausted these claims (#73, 77).  Given plaintiff's lack of evidence, the court finds that plaintiff

10  failed to exhaust administrative remedies as to any claim for conditions of confinement.

11   As noted above, the court treats defendant's motion for summary judgment as a motion to

12  dismiss.  Therefore, the court dismisses without prejudice plaintiff's claims in count III.[7]

13  **III. CONCLUSION**

14   Based on the foregoing and for good cause appearing, the court concludes that there is no

15  genuine issue of fact as to whether defendants violated plaintiff's Eighth Amendment rights by

16  use of force.  Nor has plaintiff stated a claim with regard to defendants conspiring to deprive

17  plaintiff of his civil rights.  With regard to the conditions of confinement claims, the court finds

18  that plaintiff has failed to exhaust administrative remedies.

19   The court respectfully recommends that defendants' motion for summary judgment (#69)

20  be **GRANTED** as to count I.  To the extent that count II states a conspiracy claim, the court

21  recommends that plaintiff's claim be **DISMISSED with prejudice** for failure to state a claim

22  pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  To the extent counts II and III challenge plaintiff's

23  condition of confinement, the court construes defendants' motion for summary judgment as a

24  motion to dismiss without prejudice.  As such the court recommends that plaintiff's condition of

25  confinement claims be **DISMISSED without prejudice**.

26

27

28  [7]   Because the court finds that plaintiff has not presented any genuine issues of material fact, the court does not address any qualified immunity issues.

11

1      The parties are advised:

2      1.    Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#69) be **GRANTED** as to count I.  The court further recommends that plaintiff's conspiracy claim in count II be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that plaintiff's conditions of confinement claims in count III be **DISMISSED without prejudice**.

**DATED:** November 13, 2009.

**UNITED STATES MAGISTRATE JUDGE**